NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2024 IL App (4th) 230751-U

NO. 4-23-0751

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
June 7, 2024
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Winnebago County |
| RYAN LANE CLARK, | ) | No. 16CF621 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | John S. Lowry, |
| | ) | Judge Presiding. |

JUSTICE TURNER delivered the judgment of the court.
Justices Knecht and DeArmond concurred in the judgment.

**ORDER**

¶ 1    *Held*: The appellate court affirmed the trial court's judgment denying defendant's
motion to withdraw his guilty plea. The record did not refute postplea counsel's
contention he strictly complied with Illinois Supreme Court Rule 604(d) (eff. July
17, 2017).

¶ 2    In September 2016, the State charged defendant with six counts of aggravated

criminal sexual assault (720 ILCS 5/11-1.30(a)(1), (2), (8) (West 2014)) in connection with the

November 27, 2014, sexual assault of the victim, C.M.W. The State subsequently dismissed four

counts when defendant waived a jury, leaving two Class X felony charges.

¶ 3    In November 2017, defendant entered an open plea of guilty to one count of

criminal sexual assault (720 ILCS 5/11-1.20(a)(1) (West 2014)), a Class 1 felony, and the State

dismissed the remaining charge. Among its admonitions, the trial court informed defendant of

the sentencing ranges for the charges, including defendant's sentence would include a term of

three years to life of mandatory supervised release (MSR). However, the court did not inform defendant he could be held in prison upon completion of his term if he did not obtain housing in compliance with the conditions of his MSR, a procedure known as being "violated at the door." See *Cordrey v. Prisoner Review Board*, 2014 IL 117155, ¶ 9, 21 N.E.3d 423.

¶ 4 Defendant subsequently moved to withdraw the plea, arguing he was pressured into accepting the State's plea offer. Defendant later filed a *pro se* supplemental motion, alleging his trial counsel was ineffective for failing to inform him he could be held in prison if he did not obtain housing in compliance with the terms of his MSR. The motion was denied, and defendant appealed. The appellate court granted defendant's motion for a summary remand for compliance with Illinois Supreme Court Rule 604(d) (eff. July 1, 2017).

¶ 5 On remand, new counsel amended the motion to withdraw the plea and filed a Rule 604(d) certificate. The new motion did not mention defendant's allegation trial counsel failed to inform him of the consequences of failing to obtain suitable housing upon completion of his prison term. Defendant filed amendments to the motion that also did not mention the issue. The issue also was not raised at the hearing on the motion. The trial court denied the motion.

¶ 6 On appeal, defendant contends his postplea counsel failed to strictly comply with Rule 604(d) by failing to amend his motion to withdraw the plea to allege he was not properly admonished of the possibility of being held in prison if he did not obtain suitable housing upon release. We affirm.

¶ 7                                    I. BACKGROUND

¶ 8 The State charged defendant in connection with the sexual assault of C.M.W. On November 1, 2017, the day before trial, the parties discussed with the trial court a final plea offer under which defendant would plead guilty to one count of criminal sexual assault. The court

admonished defendant the crime was a Class 1 felony with a potential sentence of 4 to 15 years' incarceration served at 85%, followed by a term of 3 years to life of MSR. The court admonished defendant, if he went to trial and was found guilty, he would be facing two Class X felonies with potential sentences of 6 to 30 years' incarceration, served at 85%, that were required to be served consecutively and with a term of 3 years to life of MSR.

¶ 9 The next day, defendant accepted the plea offer. The trial court again admonished defendant of the sentencing ranges. The court also admonished defendant of his right to plead not guilty and his right to a jury trial. The court confirmed no threats or promises were made in exchange for defendant's plea. Defendant stated he understood the plea, had discussed the matter with trial counsel, and was satisfied with counsel's representation.

¶ 10 The State gave a factual basis for the plea, telling the trial court, on November 27, 2014, Rockford police officers met with C.M.W. regarding a criminal sexual assault. C.M.W. reported she was walking home when a man approached her in a car and asked if she wanted a ride. It was cold outside, so C.M.W. got into the car. The man drove to the area of 11th Street and told her to get in the back seat of the car. C.M.W. felt threatened and forced to do what he wanted. C.M.W. reported the man had her remove her clothing, pulled his pants down, and put his penis in her vagina, with his arm around her neck, causing her head to hit the door. The man opened the door, and C.M.W. crawled out and fell to her knees in the snowy parking lot. The man told C.M.W. if she screamed, he would hit her in the face. The man then sexually assaulted C.M.W. again. C.M.W. gave a description of the man to the police, who noted a handprint in the snow at the scene, corroborating C.M.W.'s report. Evidence from a sexual assault kit matched defendant. C.M.W. then identified defendant in a photo lineup as the person who sexually assaulted her.

¶ 11 The trial court accepted the plea. During the plea proceedings, nothing was mentioned concerning the possibility defendant could be held in prison after completion of his prison term if he were unable to find suitable housing to meet the conditions of his MSR.

¶ 12 On November 30, 2017, defendant, through his trial counsel, moved to withdraw the plea, arguing he was pressured into accepting the State's plea offer and did not have sufficient time to contemplate the plea offer. Counsel also filed a certificate facially in compliance with Rule 604(d). The State filed a response.

¶ 13 On February 5, 2018, defendant filed a *pro se* supplemental motion, alleging, in part, trial counsel was ineffective for failing to inform him, once he "reached MSR," if he did not find "a house worthy to parole," he would be "forced to stay in prison for that time, meaning even more prison time than was promised." Defendant did not state he would have rejected the plea had he known this.

¶ 14 In a section entitled "New Evidence," defendant alleged he had been informed the victim had recanted "her story about a gun; that her story and charges against [him] were based on." He stated, had he known that, he would not have accepted the plea. Defendant also included a section labeled "Innocence," stating the act was consensual, "[n]ot only by my words, but also by pictures and [C.M.W.'s] own testimony." Defendant did not provide further details concerning the alleged "pictures" or "testimony." Neither counsel's motion nor defendant's supplemental motion included any affidavits.

¶ 15 The trial court held a *Krankel* hearing (see *People v. Krankel*, 102 Ill. 2d 181, 464 N.E.2d 1045 (1984)), during which defendant's allegations of ineffective assistance were discussed, but issues concerning MSR were not raised. The court declined to find trial counsel neglected defendant's case and later found counsel's conduct in advising defendant to plead

guilty was a matter of strategy. However, the court appointed a public defender to represent defendant on his motion to withdraw the plea.

¶ 16　　　New counsel filed an amended motion that did not mention the failure of trial counsel to inform defendant of the possibility he could be held in prison if he failed to obtain suitable housing at the end of his prison term. As to any possible defense, counsel wrote, "Defendant believes that statements by the victim subsequent to the plea are contradictory to statements she made to police, and if known at the time he would not have entered a plea of guilt." On June 5, 2018, counsel filed an amended motion, adding a Rockford police report and C.M.W.'s written victim-impact statement in support of that allegation. The police report stated defendant pointed a gun at C.M.W. In the victim impact statement, C.M.W. stated defendant told her he had a gun. In another defense exhibit in the record, consisting of C.M.W.'s written statement to police, C.M.W. stated she did not see the gun after she got in the back seat. No affidavits were included. Counsel filed a Rule 604(d) certificate. After a hearing, the trial court denied the motion, and defendant's trial counsel returned to the case.

¶ 17　　　At sentencing, defendant maintained his innocence, stating the act was a consensual "sex-for-money transaction." The State presented evidence defendant had a substantial criminal history and had been accused of sexually assaulting two other victims, with both assaults occurring near 11th Street. The trial court sentenced defendant to 14 years' incarceration, served at 85%, with 3 years to natural life of MSR. Trial counsel filed a motion to reconsider the sentence without filing a Rule 604(d) certificate. The court denied the motion, and defendant appealed. The appellate court granted defendant's motion for summary remand for compliance with Rule 604(d).

¶ 18          On remand, new postplea counsel filed a new motion to withdraw the guilty plea and filed a facially valid Rule 604(d) certificate. The new motion did not mention defendant's claim trial counsel failed to inform him of the consequences of failing to obtain suitable housing upon completion of his prison term. Defendant filed *pro se* amendments to the motion and various *pro se* affidavits that also did not mention the issue. The issue also was not raised at the hearing on the motion, during which both defendant and trial counsel testified. Defendant repeated in his motion and testimony his claim C.M.W.'s statements were contradictory and said he would have gone to trial had he known of those contradictions. The trial court denied the motion.

¶ 19          This appeal followed.

¶ 20                              II. ANALYSIS

¶ 21          On appeal, defendant contends postplea counsel failed to strictly comply with Rule 604(d). Defendant recognizes counsel filed a facially valid Rule 604(d) certificate but argues the record refutes counsel's certification he strictly complied with Rule 604(d) because counsel failed to allege defendant's *pro se* claim his plea was involuntary because of ineffective assistance of counsel when trial counsel failed to inform him he could be held in prison upon completion of his prison term if he did not obtain housing in compliance with the conditions of MSR. Thus, he requests a remand for new postplea proceedings.

¶ 22          Rule 604(d) requires a defendant challenging a guilty plea to file a motion to withdraw the plea within 30 days of the date that the sentence is imposed. Ill. S. Ct. R. 604(d) (eff. July 17, 2017). The motion must be in writing and state the grounds for challenging the plea. When the motion is based on facts that do not appear in the record, it must be supported by an affidavit. Ill. S. Ct. R. 604(d) (eff. July 17, 2017). "The trial court shall then determine

- 6 -

whether the defendant is represented by counsel, and if the defendant is indigent and desires counsel, the trial court shall appoint counsel." Ill. S. Ct. R. 604(d) (eff. July 17, 2017). The rule then provides:

> "The defendant's attorney shall file with the trial court a certificate stating that the attorney has consulted with the defendant either by phone, mail, electronic means or in person to ascertain defendant's contentions of error in the sentence and the entry of the plea of guilty, has examined the trial court file and both the report of proceedings of the plea of guilty and the report of proceedings in the sentencing hearing, and has made any amendments to the motion necessary for adequate presentation of any defects in those proceedings.

> The motion shall be heard promptly and, if [the motion] is allowed, the trial court shall modify the sentence or vacate the judgment and permit the defendant to withdraw the plea of guilty and plead anew." Ill. S. Ct. R. 604(d) (eff. July 17, 2017).

"Under Rule 604(d), any issue not raised in a motion to withdraw a guilty plea or to reconsider a sentence after a guilty plea is forfeited." *People v. Thompson*, 375 Ill. App. 3d 488, 492, 874 N.E.2d 572, 575-76 (2007).

¶ 23        The attorney's certificate must strictly comply with the requirements of Rule 604(d). See *People v. Janes*, 158 Ill. 2d 27, 35, 630 N.E.2d 790, 793 (1994). If the certificate does not satisfy this standard, a reviewing court must remand the case to the trial court for proceedings that strictly comply with the rule. *Janes*, 158 Ill. 2d at 33, 630 N.E.2d at 792.

¶ 24        When counsel files a facially valid certificate of compliance, we may consult the record to determine whether counsel actually fulfilled his or her obligations under Rule 604(d).

*People v. Bridges*, 2017 IL App (2d) 150718, ¶ 8, 87 N.E.3d 441.  We further note, in *People v. Shirley*, 181 Ill. 2d 359, 369, 692 N.E.2d 1189, 1194 (1998), our supreme court rejected the premise the strict-compliance standard must be applied so mechanically as to require Illinois courts to grant multiple remands and new hearings following an initial remand for Rule 604(d) compliance.  Once the remedy for lack of strict compliance has been granted through a remand and an opportunity for the defendant to be heard, technical noncompliance with Rule 604(d) will not require successive remands and rehearings.  See *People v. Evans*, 2017 IL App (3d) 160019, ¶ 24, 72 N.E.3d 421.  However, "*Shirley* does not stand for the blanket proposition that a matter may only be remanded one time for compliance with Rule 604(d)." *Evans*, 2017 IL App (3d) 160019, ¶ 24.  If the defendant was deprived of a full and fair hearing, a remand would be appropriate.  See *Tejada-Soto*, 2012 IL App (2d) 110188, ¶ 16, 966 N.E.2d 375; *People v. Bridges*, 2021 IL App (2d) 190778-U, ¶ 23 (cited as persuasive authority under Illinois Supreme Court Rule 23).  We review *de novo* the question of whether defense counsel complied with Rule 604(d).  *People v. Grice*, 371 Ill. App. 3d 813, 815, 867 N.E.2d 1143, 1145 (2007).

¶ 25        First, we note defendant does not contend he was denied a hearing.  Defendant had two hearings on motions to withdraw the plea and testified at both.  Defendant instead takes issue with trial counsel's failure to advance the claim from his *pro se* motion concerning the potential he could be held indefinitely in prison after the completion of his prison term if he were unable to obtain housing compliant with the terms of his MSR.  Thus, he alleges the record rebuts postplea counsel's assertion he strictly complied with Rule 604(d) when postplea counsel failed to amend the motion to withdraw the plea to allege ineffective assistance of trial counsel on the matter.

¶ 26       The State argues only that defendant failed to show prejudice based on trial counsel's failure to inform him of the MSR implications. Thus, the State asserts the record does not refute postplea counsel's Rule 604(d) certificate because defendant's underlying claim lacks merit.

¶ 27       A defendant has no absolute right to withdraw a plea of guilty. *People v. Delvillar*, 235 Ill. 2d 507, 520, 922 N.E.2d 330, 338 (2009). "Rather, he must show a manifest injustice under the facts involved to obtain leave to withdraw his plea." (Internal quotation marks omitted.) *People v. Beasley*, 2017 IL App (4th) 150291, ¶ 32, 85 N.E.3d 568.

> "In considering such a motion, the court shall evaluate whether the guilty plea was entered through a misapprehension of the facts or of the law, or if there is doubt of the guilt of the accused and the ends of justice would be better served by submitting the case to trial." *People v. Pullen*, 192 Ill. 2d 36, 40, 733 N.E.2d 1235, 1237 (2000).

The decision to grant or deny a motion to withdraw is reviewed for an abuse of discretion. *Delvillar*, 235 Ill. 2d at 519, 922 N.E.2d at 338.

¶ 28       Claims of ineffective assistance of counsel are governed by the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). *People v. Cathey*, 2012 IL 111746, ¶ 23, 965 N.E.2d 1109. "To prevail on a claim of ineffective assistance of counsel, a defendant must show both that counsel's performance was deficient and that the deficient performance prejudiced the defendant." *People v. Petrenko*, 237 Ill. 2d 490, 496, 931 N.E.2d 1198, 1203 (2010). A defendant must satisfy both prongs of the *Strickland* standard, and the failure to satisfy either prong precludes a finding of ineffective assistance of counsel. *People v. Clendenin*, 238 Ill. 2d 302, 317-18, 939 N.E.2d 310, 319 (2010). To establish prejudice, the defendant must show, but

for counsel's errors, there is a reasonable probability the result of the proceeding would have been different. *People v. Houston*, 229 Ill. 2d 1, 4, 890 N.E.2d 424, 426 (2008).

¶ 29    In the context of required admonitions from the trial court, for a defendant to knowingly and voluntarily plead guilty, due process generally requires he or she must be advised of the direct consequences of a guilty plea. *People v. Hughes*, 2012 IL 112817, ¶ 35, 983 N.E.2d 439. "[A] direct consequence of a guilty plea is one which has a definite, immediate and largely automatic effect on the range of a defendant's sentence." *Hughes*, 2012 IL 112817, ¶ 35. "[A] defendant need not be advised by the trial court of the collateral consequences of a guilty plea." *Hughes*, 2012 IL 112817, ¶ 36. "A collateral consequence is one which the circuit court has no authority to impose, and results from an action that may or may not be taken by an agency that the trial court does not control." (Internal quotation marks omitted.) *Hughes*, 2012 IL 112817, ¶ 36; see *People v. Schmidt*, 2021 IL App (4th) 200480-U, ¶ 24 (cited as persuasive authority under Illinois Supreme Court Rule 23) (applying the above principles).

> " 'Violating an offender at the door is a legal fiction wherein it is imagined that the offender is released from custody, placed on MSR, but when he leaves the institution he is in violation of his supervision terms and he is immediately placed back in custody. In reality, the offender simply remains incarcerated until a MSR prerequisite is satisfied. This can continue until either (1) the term of MSR expires, or (2) the prerequisite is satisfied.' " *Cordrey*, 2014 IL 117155, ¶ 9 (quoting *Armato v. Grounds*, 944 F. Supp. 2d 627, 631 n.3 (C.D. Ill. 2013)).

This procedure is also sometimes referred to as a "turnaround practice." See *People v. Shaw*, 2023 IL App (1st) 221358, ¶ 14. Because defendant's MSR term may be three years to natural

life, there is the possibility, were he "violated at the door" repeatedly, he could spend the rest of his natural life in prison. See *Schmidt*, 2021 IL App (4th) 200480-U, ¶ 24.

¶ 30 However, decisions related to a defendant's MSR term are made by the prisoner review board, which the trial court does not control. *Schmidt*, 2021 IL App (4th) 200480-U, ¶ 25. Therefore, this possible consequence is a collateral consequence of a defendant's guilty plea, and the court has no duty to admonish a defendant of such consequences. *Schmidt*, 2021 IL App (4th) 200480-U, ¶ 25 (citing *Delvillar*, 235 Ill. 2d at 520-21, 922 N.E.2d at 338, and *People v. McDonald*, 2018 IL App (3d) 150507, ¶ 32, 95 N.E.3d 1). Thus, the lack of admonitions from the court does not call into question the constitutional voluntariness of a defendant's guilty plea. *Schmidt*, 2021 IL App (4th) 200480-U, ¶ 25 (citing *Delvillar*, 235 Ill. 2d at 521-22, 922 N.E.2d at 339). Likewise, again in the context of admonitions required from the court, postplea counsel need not raise the matter of lack of proper admonitions by the court in a motion to withdraw the plea, because legally unmeritorious amendments are not "necessary" amendments for purposes of Rule 604(d). *Schmidt*, 2021 IL App (4th) 200480-U, ¶ 31.

¶ 31 While the above principles apply to admonitions provided by the trial court, the First District in *Shaw*, addressed the issue in relation to counsel's failure to advise a defendant about the "turnaround practice" at issue. In remanding the defendant's postconviction petition for third-stage proceedings, the appellate court also specifically noted the matter was a collateral consequence of the plea. *Shaw*, 2023 IL App (1st) 221358, ¶ 38. However, the appellate court ultimately held a *pro se* postconviction petitioner, who had been "violated at the door," made a substantial showing of a deprivation of a constitutional right when the trial court, in defense counsel's presence, misinformed the defendant at his guilty-plea proceeding by stating the parole process could not change the date of the defendant's release, and counsel did not correct the

court on the matter. *Shaw*, 2023 IL App (1st) 221358, ¶¶ 42-45. Thus, unlike here, the issue in *Shaw* encompassed more than counsel's simple failure to advise the defendant of a collateral consequence of the plea because it instead involved counsel's failure to correct "affirmative misinformation."

¶ 32 The *Shaw* court also noted, until recently, courts examining claims concerning the validity of guilty pleas applied the same test as for due process concerning the required admonitions by the trial court, holding plea counsel was not required to advise a client of the collateral consequences of a guilty plea. *Shaw*, 2023 IL App (1st) 221358, ¶ 49. However narrow exceptions have been recognized. In particular, in circumstances such as the failure to advise of the collateral consequences of deportation, where consequences are severe, certain to occur, enmeshed in the criminal process, and are predictably important to a defendant's calculus, they are not categorically excluded from *Strickland*'s purview, despite being traditionally categorized as collateral. *Shaw*, 2023 IL App (1st) 221358, ¶ 51. The *Shaw* court ultimately found the risk of being "violated at the door" per the "turnaround practice" and being held indefinitely beyond the conclusion of one's prison term was such a consequence, although the court also again noted the circumstances of the case involved affirmative misinformation. *Shaw*, 2023 IL App (1st) 221358, ¶¶ 52, 55. The *Shaw* court went on to determine the defendant also established prejudice because he alleged more than a bare assertion he would have gone to trial if properly advised. *Shaw*, 2023 IL App (1st) 221358, ¶ 60.

¶ 33 The State does not meaningfully dispute and seems to agree with *Shaw*'s analysis pertaining to an attorney's obligation to advise his or her client of the collateral consequences of being "violated at the door." We note what occurred in *Shaw*, where erroneous advice was given to the defendant, was not remotely similar to what occurred in this case. In any event, we need

not determine the extent, if any, of an attorney's obligation to advise a client of the "turnaround practice," because we agree with the State the record here does not show defendant suffered prejudice.

¶ 34 For a defendant to suffer prejudice from counsel's failure to advise him of the issue, there must be " 'a reasonable probability that, but for counsel's errors, [the defendant] would not have pleaded guilty and would have insisted on going to trial.' " *People v. Brown*, 2017 IL 121681, ¶ 26, 102 N.E.3d 205 (quoting *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)). Specifically, the defendant " 'must convince the court that a decision to reject the plea bargain would have been rational under the circumstances.' " *Brown*, 2017 IL 121681, ¶ 40 (quoting *People v. Valdez*, 2016 IL 119860, ¶ 29, 67 N.E.3d 233). This requires "consideration of the specific circumstances" of the defendant's case. *Brown*, 2017 IL 121681, ¶ 41.

¶ 35 In moving to withdraw a guilty plea, a defendant is not required to present "a claim of innocence or a plausible defense." *Brown*, 2017 IL 121681, ¶ 45. However, a defendant still "must raise more than a bare allegation that, absent counsel's errors, he would have spurned the guilty plea and proceeded to a trial." *People v. Tucek*, 2019 IL App (2d) 160788, ¶ 18, 125 N.E.3d 402. Further, "[a] conclusory allegation that a defendant would not have pleaded guilty and would have demanded a trial is insufficient to establish prejudice." *Valdez*, 2016 IL 119860, ¶ 29, 67 N.E.3d 233; see *Brown*, 2017 IL 121681, ¶ 47. "Courts should not upset a plea solely because of *post hoc* assertions from a defendant about how he would have pleaded but for his attorney's deficiencies." *Lee v. United States*, 582 U.S. 357, 369 (2017).

¶ 36 Here, defendant never filed an affidavit averring counsel actually failed to inform him of the matter and failed to allege even a bare assertion he would not have pleaded guilty and would have demanded a trial had he been informed of the "turnaround practice." Even giving

- 13 -

defendant the benefit of the doubt in that he made such an assertion in relation to other claims in his *pro se* motion, defendant failed to provide any facts supporting the conclusion he would have rejected the plea offer based on the potential application of the "turnaround practice." Thus, he failed to sufficiently allege prejudice.

¶ 37 Furthermore, the record casts doubt on whether it would have been rational for defendant to reject the plea offer. Absent the plea, defendant faced two charges punishable by 6 to 30 years' incarceration, required to be served consecutively. 730 ILCS 5/5-4.5-25(a) (West 2014); 730 ILCS 5/5-8-4(d)(2) (West 2014). Thus, he would have faced an overall sentence of 12 to 60 years' imprisonment. The record also does not support the conclusion defendant would have received a sentence close to the minimum term, and it would be mere speculation to reach such a conclusion. Thus, by pleading guilty, defendant potentially avoided significant additional time in prison. Further, the "turnaround practice" would still be applicable to him had he gone to trial. See 730 ILCS 5/5-8-1(d)(4) (West 2014). Under these circumstances, it is not evident from the record it would have been rational for defendant to reject the plea offer based on the existence of that practice. See *People v. Davis*, 2022 IL App (4th) 210733-U, ¶¶ 26-27 (cited as persuasive authority under Illinois Supreme Court Rule 23).

¶ 38 Defendant argues his decision would have been rational because he had a defense. However, the record shows merely minor contradictions regarding when or whether the victim saw a gun during the assault. Contrary to defendant's assertions, those contradictions do not prove his innocence. Instead, defendant has done nothing to put forth a plausible defense other than attacking the credibility of C.M.W., when other evidence in the record supported a finding of his guilt. See generally *Tucek*, 2019 IL App (2d) 160788, ¶ 20.

¶ 39    Finally, defendant argues the underlying merits are irrelevant to the issue of strict compliance. We disagree. "Compliance with Rule 604(d) requires counsel to consider bases relevant to the particular ground on which a defendant seeks to withdraw his guilty plea and to amend the motion with those bases deemed 'necessary for adequate presentation of any defects in those proceedings.' " *People v. Jefferson*, 2023 IL App (4th) 220814-U, ¶ 29 (quoting Ill. S. Ct. R. 604(d) (eff. July 1, 2017)). "Compliance with Rule 604(d) does not require the advancement of any particular ground for withdrawal of a guilty plea." *Jefferson*, 2023 IL App (4th) 220814-U, ¶ 29. As previously noted, "[l]egally unmeritorious amendments are not 'necessary' amendments." *Schmidt*, 2021 IL App (4th) 200480-U, ¶ 31. Here, the record does not show an amendment based on trial counsel's failure to advise defendant of the "turnaround practice" would have merit. Thus, the record does not refute counsel's facially valid Rule 604(d) certificate.

¶ 40                              III. CONCLUSION

¶ 41    For the reasons stated, we affirm the trial court's judgment denying defendant's motion to withdraw his plea.

¶ 42    Affirmed.